UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60139-CR-WPD

UNITED STATES OF AMERICA

vs.

KEYAIRA BOSTIC,

    Defendant.
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its undersigned counsel, hereby submits this Sentencing Memorandum as to Defendant Keyaira Bostic (the "Defendant"). The Defendant is presently set for sentencing before the Court on February 3, 2022 for her conviction at trial of one count of conspiracy to commit bank fraud and wire fraud, in violation of Title 18, United States Code, Section 1349, and three counts of wire fraud, in violation of Title 18, United States Code, Section 1343. The offense stems from the Defendant's application for a fraudulent Paycheck Protection Program ("PPP") loan of $84,515 on behalf of her company, I Am Liquid, Inc. ("Liquid"), and $3,345,895 in fraudulent loans sought through other conspirators that the Defendant referred to the scheme, for a total intended loss of $3,430,410.

For the reasons set forth herein, the United States respectfully recommends that the Court sentence the Defendant to a term of imprisonment of 46 months, to be followed by three years of supervised release.[1] A sentence of 46 months' imprisonment represents the bottom of the applicable range of the United States Sentencing Guidelines (the "Guidelines") as calculated by

---

[1] The United States is also seeking forfeiture of $124,515 and restitution. The Defendant is also required to pay a special assessment of $400.

the United States Probation Office ("Probation") in the Presentence Investigation Report [ECF No. 135] (the "PSR"), to which the government has no objection. Furthermore, the sentence recommended herein by the United States will provide punishment for the offense of conviction that is sufficient, but not greater than necessary, to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

**I.     FACTUAL BACKGROUND**

In early 2020, as the COVID-19 pandemic spread across the country and disrupted everyday life, causing illness, death and economic distress, the U.S. government assembled relief programs to help those whose livelihoods were jeopardized. One of those programs was the PPP. Against this backdrop, the Defendant and her co-conspirators participated in a scheme to obtain by fraud millions of dollars in forgivable loans through the PPP, and have done so by conspiring with James Stote, Damion McKenzie, and others. The Defendant obtained a fraudulent PPP loan for her own company, Liquid, with Stote providing falsified documents and submitting the application on the Defendant's behalf. To inflate the size of these PPP loans, and the corresponding kickbacks, the conspirators relied on a variety of false statements, including by submitting falsified bank statements and payroll tax forms.

**A.     The CARES Act**

In March 2020, in response to the many challenges presented by the pandemic, Congress passed the CARES ACT, Pub. L. 116-136, which created the PPP. The PPP authorized $349 billion in forgivable loans to small businesses to be used for payroll, mortgage interest, rent/lease payments, or utilities. In April 2020, Congress authorized an additional $310 billion for PPP funding. These funds were designed to address the unprecedented crisis facing Americans—

especially business owners whose livelihoods were threatened by the public health emergency. PPP funds were designed as a lifeline.

The program was designed to provide funds quickly and easily to qualifying individuals. PPP loans were not dispensed through any government bureaucracy; funds were distributed by banks who had existing relationships with many of the people in need.  To apply, individuals submitted an application to a participating financial institution along with supporting documentation as to the business's payroll expenses.  The supporting documentation requirement was minimal and could be satisfied with one years' worth of the company's tax records.  If a PPP loan application was approved, the participating financial institution funded the PPP loan using its own monies, which were 100% guaranteed by the Small Business Administration ("SBA").

**B.      Overview of Defendant's Conduct**

A more detailed recitation of the facts relating to the scheme are detailed in the Indictment [ECF No. 17], and the PSR [ECF No. 135].

Beginning in May 2020 through in or around at least August 2020, the Defendant conspired with Stote, McKenzie, and others to obtain by fraud a PPP loan on behalf of Liquid, a Florida company for which the defendant is the owner.

In furtherance of the conspiracy, the Defendant caused the submission of a PPP loan application on behalf of Liquid that the Defendant knew contained materially false and fraudulent representations, including both the number of employees that Liquid had during each quarter of 2019 and the amount of wages paid by Liquid during each quarter of 2019.  Specifically, on May 19, 2020, Stote submitted four (4) signed and dated Internal Revenue Service ("IRS") Forms 941 (titled, "Employer's Quarterly Federal Tax Returns"), that is, one for each quarter of 2019

(collectively, the "Forms 941"), each of which falsely represented that Liquid had 10 employees during each quarter of 2019.

In addition, Defendant electronically signed a PPP loan application form on behalf of Liquid, which falsely represented that Liquid had 10 employees and an average monthly payroll of $33,806. Based on the representations made in the loan application paperwork and supporting documents, Bank Processor 1 approved a PPP loan for Liquid. On May 20, 2020, Bank 1 wired $84,515 in loan proceeds into the Liquid bank account.

Trial evidence indicated that the Defendant did not use the PPP funds as she certified and as required under the PPP. On May 21, 2020, the Defendant conducted a wire transfer in the amount of $21,130 to Stote as a kickback for facilitating her fraudulent loan. At trial, Bostic testified she also gave $5,000 from her PPP proceeds to McKenzie as a fee for facilitating the loan. The Defendant's bank records reflected she also spent the funds on personal expenses.

Meanwhile, the Defendant referred other associates to Stote for the purpose of obtaining fraudulent PPP loans. Trial evidence showed that nine of the Defendant's referrals sought fraudulent loans seeking approximately $3,345,895. Of those, approximately five were approved and $1,993,534 in PPP loan funds were paid out. [ECF No. 117-1 at 20]. The evidence also showed that the Defendant received $40,000 in payments from Stote following his receipt of kickback payments from the Defendant's referrals to Stote.

## II.    PROCEDURAL HISTORY

On December 8, 2020, the Defendant was charged by indictment with conspiracy to commit wire fraud and bank fraud, in violation of Title 18, United States Code, Section 1349, three counts of wire fraud, in violation of Title 18, United States Code, Section 1343, and bank fraud,

4

in violation of Title 18, United States Code, Section 1344 [ECF No. 17]. Following a 7-day trial, the jury convicted the Defendant of conspiracy to commit bank fraud and wire fraud (Count 1), and three counts of wire fraud (Counts 5-7). [ECF No. 97]. Sentencing is presently scheduled for February 3, 2022.

### III.   SENTENCING GUIDELINES CALCULATIONS

#### A.   The Government Agrees with the Defendant's Objection as to Aggravating Role but not as to a Reduction for Minor Role

As set forth in the PSR, Probation computes the Total Offense Level at 26 (PSR ¶¶ 49-60). At Criminal History Category I, this produces an advisory Guidelines range of 63-78 months of imprisonment pursuant to the Sentencing Table in Chapter 5, Part A of the Guidelines. The Defendant, however, objects to this calculation.

The Defendant first objects to the application of an enhancement for being a supervisor or manager and the resulting increase of three levels pursuant to Section 3B1.1(b). [ECF No. 134]. Despite the evidence presented at trial that the Defendant supervised and managed her referrals, the United States agrees that this enhancement should not apply, consistent with the position of similarly situated defendants who referred other associates to the leaders of the scheme, including co-defendant McKenzie. *See, e.g.*, *United States v. Clark*, Case No. 21-CR-60029 (S.D. Fla.).

The Defendant further argues that she should be granted a downward variance for having a minor role. The Defendant incorrectly asserts that "no evidence suggested, let alone established, that Ms. Bostic charged or received a referral fee from any of the people she referred." [ECF No. 134 at 2]. The evidence at trial established that the Defendant received two payments of $20,000 each on June 10 and June 15, 2020, from Stote's companies. [Ex. 102c]. Those payments came soon after Stote received kickback payments from the Defendant's referral, Shanrika Duhart, on

June 5 and June 9, 2020. [Ex. 120b]. The communications between Stote and the Defendant further corroborated the fact that the Defendant was collecting payments from which she stood to benefit. [Exs. 339 (Stote telling the Defendant that her referral needs to pay "our 25%"); 213b ("Now who is the lady that still owes us money?")]. And when the scheme began to unfold, the Defendant met with Stote to try to protect herself and she explained how she was pressuring her referrals in order to collect the money owed to her and Stote. [Ex. 212b ("…cause I was like pissed, I'm like why is he not answering, so now I'm applying pressure to him. Cause he got money.")]. The Defendant points *only* to her own testimony as support for her claim that she received $40,000 from Stote as a refund for money that McKenzie paid to Stote to supposedly quash an argument during which she threatened to report him to his supervisor. [ECF No. 134 at 2]. Yet the evidence presented at trial contradicts this incredible story, which simply does not make sense in light of the evidence regarding Stote, his role in the scheme, as well as the Defendant's own role. While testifying under oath, the Defendant gave contradictory testimony that was plainly not credible, particularly as to the extent of her knowledge and knowing participation in the fraud scheme. The jury rejected her testimony when it found her guilty of conspiracy and wire fraud.[2]

The Defendant also argues that the amount of money she obtained in the scheme justifies a minor role reduction. [ECF No. 134 at 4]. Yet the Defendant took in at least $124,515 from participating in this scheme, even if she chose to send some of those funds to her coconspirators.[3]

---

[2] Given the jury's verdict as to Count 2 (Bank Fraud), it is fair to assume that the jury may have found credible the Defendant's claim that she did not *initially* read her loan documents.

[3] The Defendant argues that, assuming her total benefit was $98,385, this was 0.028% of the Guidelines loss amount and 0.049% of the actual loss amount. In fact, $98,385 is 2.8% of the Guidelines loss amount and 4.9% of the actual loss amount.

The evidence also showed that she was still actively attempting to collect kickback payments from her referrals even after Stote was arrested. The Defendant's role with respect to the loans for which she is being held accountable is not minor. Rather, the Defendant was an important participant in the relevant conduct for which she is being held accountable. The Defendant was the one who sought the proceeds of the fraudulent loan for her company. While Stote and others working with him orchestrated and carried out the scheme, the Defendant ultimately is the person who said yes to the fraud that his co-conspirators were offering.

And the Defendant is the one who played an important role in helping Stote further the fraudulent scheme. The Defendant instructed her recruits on ways to avoid having the fraudulent loans be detected by law enforcement. [Exs. 338; 339]. The Defendant then directed Stote on the amount of the fraudulent loans that Stote prepared on behalf of the Defendant's referrals. [Exs. 334 at 3, 5, 6; 202b]. The Defendant also coached her recruits on how to lie to the banks about the purpose of the kickback payments to Stote. [Exs. 334; 339; 340; 341]. The Defendant advised Stote about how to avoid taking large amounts in kickback payments to avoid detection. [Ex. 340]. And the Defendant encouraged Stote to conceal their scheme through the use of encrypted messaging services. [Exs. 214b; 334]. Contrary to her claims, the Defendant did not simply pass along documents and information and deliver fees to Stote. She went much further to facilitate the fraud and should be held accountable for such conduct.

The United States therefore submits that the Offense Level computation is as follows:

| | |
|---|---|
| Base Offense Level, § 2B1.1(a)(2) | 7 |
| Loss greater than $1,500,000 but less than $3,500,000, § 2B1.1(b)(1)(I) | 16 |
| **Total Offense Level** | **23** |

At Criminal History Category I, this produces an advisory Guidelines range of 46-57 months of imprisonment pursuant to the Sentencing Table in Chapter 5, Part A of the Guidelines.

> **B. The Government Disagrees with Probation's Assessment that a Downward Variance is Warranted in Light of Co-Defendant Damion McKenzie's 44-Month Sentence**

In the addendum to the PSR, Probation takes the position that because co-defendant Damion McKenzie brought the Defendant into the scheme, his role was therefore greater and a downward variance is warranted. [ECF No. 135-1]. The government disagrees. Although McKenzie introduced the Defendant to Stote, the Defendant soon thereafter established her own identity and role in the fraud scheme that was separate and apart from and arguably greater than that of McKenzie. As was proven at trial, the Defendant brought in and managed her own referrals and even set the amount of some of their loans, as was discussed above. Neither Probation nor the Defendant claims or demonstrates that McKenzie was as involved as the Defendant was with his referrals. And to the extent the Defendant's Guidelines range is similar to McKenzie's despite the latter's higher loss amount, the reason is for that is simple—McKenzie pleaded guilty and received a reduction for acceptance of responsibility, and the Defendant proceeded to trial. And in considering the Defendant's conduct, it bears mentioning that she was not truthful in her trial testimony; she disclaimed all knowledge and responsibility for her actions, which the jury rejected.

II. **CONSIDERATION OF SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)**

Title 18, United States Code, Section 3553(a), enumerates several factors that the Court shall consider in sentencing a defendant. As addressed in turn below, the 3553(a) factors relevant to the Defendant support the sentence recommended by the United States.

### A. Nature and Circumstances of the Offense

This was a serious offense. In 2020, as the COVID-19 pandemic spread across the country causing illness, death and economic distress, the government created PPP loans to help small business owners and their employees whose livelihoods were jeopardized. The Defendant took advantage of the program by submitting a false application claiming to have employees and payroll that did not exist. The Defendant then referred multiple other people to do the same for which she received at least $40,000. The Defendant's willful participation in this serious criminal conduct warrants a sentence of imprisonment within the advisory Guidelines range. The United States' recommended sentence at the bottom of the Guidelines range is sufficient but not greater than necessary to accomplish this goal.

### B. History and Characteristics of the Defendant

The Defendant is a 32-year-old woman who is the president of Liquid, which she incorporated in 2015. [ECF No. 135 at ¶ 28]. The Defendant is not married and has three children.[4] [*Id.* ¶¶ 71]. The Defendant has a Criminal History Category of I.

### C. Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct and Protect the Public from Further Crimes of the Defendant

The sentence in this case should address a need for both general and specific deterrence. As to general deterrence, the Eleventh Circuit has explicitly stated that "general deterrence is an important factor in white-collar cases, where the motivation is greed." *United States v. Hayes*, 762 F.3d 1300, 1308 (11th Cir. 2014). As explained above, this case was motivated by greed at a time when millions of Americans were suffering from the economic impact of a global pandemic. As

---

[4] The Defendant provided inconsistent information to Probation regarding those children. [PSR ¶¶ 71-74].

9

the pandemic spread, so too did fraud related to the PPP program and other programs designed to provide critical economic assistance—especially in the Southern District of Florida. The government's recommended sentence of imprisonment in this case is thus appropriate to provide both specific and general deterrence. Such a sentence will send a clear message to the Defendant and other offenders that there are serious consequences for defrauding government pandemic relief programs. Actors like the Defendant who seek to defraud these programs not only drain the program of limited funding, they make it more difficult for administrators of government and other relief programs to get aid to individuals that qualify for and need it. The Defendant's sentence will serve as a warning and deterrent to others inclined to exploit pandemic relief programs.

Furthermore, a sentence at the bottom of the Guidelines is sufficient to protect the public from future crimes of this Defendant. With this sentence, the government believes the risk of recidivism is low.

### D. Need for the Sentence to Avoid Unwarranted Sentencing Disparities

The sentence recommended by the United States will not create an unwarranted sentencing disparity. There are two relevant points of comparison to avoid unwarranted sentencing disparities: sentences associated with others convicted of PPP related fraud, and the sentences of co-conspirators in this case. Judges of this Court and of other Districts have imposed sentences with significant terms of imprisonment for offenses related to PPP fraud. *See, e.g.*, *United States v. Ioannis Kralievits*, Case No. 21-20157-CR-Altonaga (S.D. Fla. June 30, 2021) (sentencing cooperating defendant to 19-month term of imprisonment (following reduction pursuant to 5K1.1) in connection with two fraudulent PPP loans totaling approximately $824,750); *United States v. David Hines*, Case No. 21-20011-CR-Cooke (S.D. Fla. May 12, 2021) (imposing 78-month term of imprisonment for defendant responsible for a loss of $3.9 million resulting from multiple

fraudulent PPP loans); *United States v. Ganell Tubbs*, 20-00193-CR-Miller (E.D. Ark.) (imposing 41-month term of imprisonment for defendant responsible for loss of $1.9 million resulting from two fraudulent PPP loans).

Twelve other conspirators in this scheme have been sentenced, eight of whom have been sentenced to terms of imprisonment within the applicable Guidelines range. On January 21, 2022, the Court sentenced co-defendant McKenzie to 44 months imprisonment, three years of supervised release, and ordered him to pay restitution and forfeiture. [ECF No. 133]. The Court granted a slight downward variance from the Guidelines range of 46-57 months.

On February 1, 2022, the Court sentenced co-conspirator Luke Pierre to 24 months imprisonment, three years of supervised release, and ordered him to pay restitution and forfeiture. *United States v. Pierre*, Case No. 21-cr-60288-WPD (S.D. Fla.). On December 10, 2021, the court sentenced co-conspirator Joshua Bellamy to 37 months imprisonment, three years of supervised release, and ordered him to pay restitution and forfeiture. *United States v. Bellamy*, Case No. 21-cr-60064-RKA (S.D. Fla.). On December 9, 2021, the court sentenced co-conspirator Yashica Bain to 24 months imprisonment, three years of supervised release, and ordered her to pay restitution and forfeiture. *United States v. Bain*, Case No. 21-cr-60200-DMM (S.D. Fla.). On December 3, 2021, the court sentenced co-conspirator Jericca Rosado to 37 months imprisonment, three years of supervised release, and ordered her to pay restitution and forfeiture. *United States v. Rosado*, Case No. 21-cr-60211-JEM (S.D. Fla.). Each of these sentences was at the bottom of the applicable Guidelines range.

On October 18, 2021, the court sentenced co-conspirator Devonte Thames to 31 months imprisonment, three years of supervised release, and ordered him to pay restitution and forfeiture.

*United States v. Thames*, Case No. 21-cr-60125-RKA (S.D. Fla.). The sentence was at the bottom of the adjusted Guidelines range after the court granted the government's motion, pursuant to Section 5K1.1, and reduced Thames' sentence by approximately 33%. Meanwhile, on October 13, 2021, the court sentenced co-conspirator Dennes Garcia to 18 months imprisonment – which was at the bottom of the Guidelines range – three years of supervised release, and ordered him to pay restitution and forfeiture. *United States v. Garcia*, Case No. 21-cr-60146 (S.D. Fla.).

In addition, on July 13, 2021, the court sentenced co-conspirator Tiara Walker to one year and one day, three years of supervised release, and ordered her to pay restitution and forfeiture. *United States v. Walker*, Case No. 20-cr-60159-RAR (S.D. Fla.). On July 27, 2021, co-conspirator Tonye Johnson was sentenced by the court to 18 months in prison, three years of supervised release, and was ordered to pay restitution and forfeiture. *United States v. Johnson*, Case No. 21-CR-60017-RKA (S.D. Fla.). On September 24, 2021, the court sentenced Brian Arnold to time served, three years of supervised release, including one year of home confinement, 600 hours of community service, and ordered him to pay restitution and forfeiture. *United States v. Arnold*, No. 21-CR-20331-BB (S.D. Fla.). Unlike defendants Smith, Thames, Walker, and Johnson, the proceeds for Defendant Arnold's fraudulent PPP loan were immediately frozen before he could pay any kickbacks or otherwise spend the funds. On October 8, 2021, the court sentenced Cindi Denton to six months imprisonment, three years of supervised release, including one year of home confinement, and ordered her to pay restitution and forfeiture. *United States v. Denton*, No. 21-CR-60171 (S.D. Fla.). Defendants Walker, Johnson, Arnold, and Denton had no criminal history

points; they each sought fraudulent PPP loans for their own companies, for less than $500,000 each, and did not refer others to the scheme.[5]

On July 30, 2021, the Court sentenced Andre Clark to 33 months imprisonment, three years of supervised release, and ordered him to pay restitution and forfeiture. *United States v. Clark*, Case No. 21-CR-60029-WPD (S.D. Fla.). Defendant Clark sought his own fraudulent PPP loan and also referred other conspirators to the scheme, and he did so with a significant criminal history. Defendant Clark's sentence was at the bottom of the Guidelines as calculated by the Court, after the Court held that a two-level minor role reduction was warranted because Clark ultimately received very little from the scheme, so his Guidelines loss amount greatly exceeded his personal gain.[6] Defendant Bostic argues for a similar reduction here. [ECF No. 134 at 4]. The government submits that such a reduction is not warranted here because, unlike Clark, there is evidence that she obtained and was able to direct the disposition of fraudulent loan proceeds of over $100,000. Perhaps more importantly, as described above, the evidence at trial established that the Defendant played an active and important role in directing her referrals and, in certain respects, even its ringleader in furtherance of the fraud.

Moreover, the intended loss amount of $3,430,410 attributable to the Defendant is an important measure of her relative culpability as compared to co-conspirators in a scheme involving over 90 fraudulent loan applications and over $35 million in intended losses. That is, the co-

---

[5] Notably, however, defendant Johnson tested positive for marijuana during the presentence investigation and attempted to conceal his marijuana use from Probation by using a device to provide urine from someone other than the test taker.

[6] Based primarily on his referrals, Clark's loss amount for sentencing purposes was between $3,500,000 and $9,500,000. However, Clark ultimately received little money from the scheme, which the Court found to be a significant factor at sentencing.

conspirators who led and organized the scheme in this case and were involved in preparing or submitting even more fraudulent loan applications will be responsible for a greater intended loss amounts, and a correspondingly higher advisory Guidelines range under Section 2B1.1. A sentence of 46 months for this Defendant, who is being held responsible only for the loss associated with her fraudulent loan and those she referred to the scheme, will provide a consistent framework for future sentences of co-conspirators in this conspiracy whose Guidelines correlate to the losses for which they are directly responsible.

### III.   RESTITUTION & FORFEITURE

Restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A(a)(1). The government will provide the Court with a final restitution amount at sentencing. Restitution is owed joint and severally with the Defendant's co-conspirators charged in at least the following related cases: *United States v. Stote*, 21-CR-00805-PAB (N.D. Ohio); *United States v. McKenzie*, 20-60139 (S.D. Fla.); and *United States v. Charno*, Case No. 21-cr-00806-PAB (N.D. Ohio).

Furthermore, United States seeks a forfeiture money judgment in the amount of $124,515.

*          *          *

### CONCLUSION

For the forgoing reasons, the United States respectfully recommends that the Court sentence the Defendant to a term of imprisonment of forty-six (46) months, to be followed by a term of supervised release of three (3) years. The United States also requests that the Court order restitution, forfeiture, and a special assessment.

Respectfully Submitted,

JUAN ANTONIO GONZALEZ                    JOSEPH S. BEEMSTERBOER

| | | | |
|---|---|---|---|
| UNITED STATES ATTORNEY | | ACTING CHIEF, FRAUD SECTION | |
| By: | /s/ *David S. Turken*<br>DAVID TURKEN<br>Assistant United States Attorney<br>Florida Bar No. 28573<br>99 NE 4TH Street<br>Miami, FL 33132-2111<br>Tel.: (305) 961-9430<br>Fax: (305) 530-7976<br>Email: david.turken@usdoj.gov | By: | /s/ *Philip B. Trout*<br>PHILIP B. TROUT<br>Trial Attorney, Fraud Section<br>U.S. Department of Justice<br>Florida Bar No. A5502688<br>1400 New York Ave NW<br>Washington, DC 20530<br>Tel: (202) 616-6989<br>Fax: (202) 514-3708<br>Email: philip.trout@usdoj.gov |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on February 1, 2022, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.

*/s/ Philip Trout*
Trial Attorney
